FILED
NOV 0 8 2018
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | CRIMINAL NO.: 18-111-02 (DLF) |
| v. | |
| JAMAL GRAVES, | |
| Defendant | |

## PROFFER OF EVIDENCE

### I. THE ELEMENTS OF THE OFFENSE

The essential elements of the offense of Conspiracy to Distribute and Possess with Intent to Distribute a Detectable Amount of Heroin and Cocaine Base, in violation of 21 United States Code, § 846, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

1. that an agreement existed between two or more persons to commit the crimes of Distributing and Possessing with Intent to Distribute a Detectable Amount of Heroin and Cocaine Base;

2. that the defendant intentionally joined in that illegal agreement; and

3. at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

See, e. g., United States v. Baugham, 449 F.3d 167, 171-174 (D.C. Cir.), cert. denied, 549 U.S. 966 (2006) (citing factors used in determining whether a conspiracy existed between a buyer and seller).

## II. **FACTUAL BASIS**

If this case were to go to trial, the government's evidence would establish beyond a reasonable doubt that:

In 2014, the Federal Bureau of Investigation, Washington Field Office (hereinafter "FBI"), Safe Streets Task force began an investigation of individuals believed to be involved in the distribution of illegal narcotics in the Washington, D.C., metropolitan area. The investigation determined that defendant Graves distributed illegal narcotics in the Washington, D.C., metropolitan area. Multiple individuals conspired with and assisted defendant Graves with the distribution and possession with intent to distribute heroin and cocaine base. Defendant Graves was known by his nicknames "Black" and "B." Co-defendant James Anthony Speaks, Jr., regularly supplied large quantities of heroin and cocaine base to defendant Graves and co-defendant Richardson for redistribution. Co-defendant Leon Bullock also supplied cocaine base to defendant Graves for redistribution, but in lesser quantities than co-defendant Speaks. Defendant Graves conspired with and was assisted by co-defendant Sean Richardson during this narcotics conspiracy to facilitate their distribution of heroin and cocaine base. During the narcotics conspiracy, defendant Graves and co-defendant Richardson often operated their illegal narcotics business and distributed heroin and cocaine base in the unit block of Webster Street, Northeast, Washington, D.C. Defendant Graves also knew that co-defendant Richardson purchased redistribution quantities of heroin and cocaine base from co-defendant Speaks.

During the investigation, six controlled purchases were conducted by a FBI confidential source from defendant Graves. For five of those controlled purchases, defendant Graves sold heroin and a small quantity of cocaine base to the confidential source in exchange for United States

currency.[1] All of the controlled purchases were audio and video recorded. On September 9, 2014, defendant Graves sold 0.82 grams of cocaine base and 2.9 grams of heroin in exchange for $730 in United States currency to the confidential source. On September 16, 2014, defendant Graves sold 6.6 grams of heroin in exchange for $1,050 in United States currency to the confidential source. On September 25, 2014, defendant Graves sold 6.0 grams of heroin in exchange for $1,200 in United States currency to the confidential source. On November 5, 2014, defendant Graves sold 7.2 grams of heroin in exchange for $1,000 in United States currency to the confidential source. For all of the controlled purchases, defendant Graves sold 25.6 grams of heroin and 0.82 grams of cocaine base to the confidential source.

During the course of the investigation, the FBI applied for and obtained court authorization to intercept wire and electronic communications on two cellular telephones used by defendant Graves. During the wiretap investigation, defendant Graves changed both telephone numbers for those two cellular telephones. During the thirty-day period of interceptions on defendant Graves' cellular telephones, there were over 9,000 intercepted wire and electronic communications. Defendant Graves and co-defendants Speaks, Richardson and Bullock intentionally spoke in coded language about their illegal drug trafficking activities to disguise the true nature of their conversations – the conspiracy to distribute and possess with intent to distribute illegal narcotics.

Defendant Graves worked with co-defendant Richardson distributing illegal narcotics. On November 3, 2014, law enforcement conducted a stop and identify of defendant Graves and co-defendant Richardson, and confirmed their identities. After that occurred, in activation

---

[1] For one controlled purchase, defendant Graves sold 6.7 grams of Monoacetylmorphine to the confidential source in exchange for $1,000 in United States currency.

number 413, co-defendant Richardson called defendant Graves. During that conversation, co-defendant Richardson said that he had drugs on him and thought that they were going to be arrested for conspiracy.

On November 4, 2014, after defendant Graves had been resupplied with illegal narcotics, in activation number 1671 at approximately 7:10 p.m., co-defendant Richardson called defendant Graves. During that conversation, co-defendant Richardson asked, "You know what I'm talking about, right?" Defendant Graves said, "Yeah." Co-defendant Richardson said, "I'm talking about the up not the down. Is you straight? Because I'm about to run out in a minute." Defendant Graves replied, "I already hollered at him." Defendant Richardson said, "Alright." During that conversation, co-defendant Richardson said that he was about to run out of cocaine base ("the up") and asked defendant Graves whether he still had cocaine base ("Is you straight?"). Co-defendant Richardson also confirmed that he was not referring to heroin ("not the down"). Defendant Graves confirmed that he had been supplied with cocaine base ("I already hollered at him").

On November 9, 2014, in activation number 3084 at approximately 9:42 a.m., defendant Graves called a customer named "Kevin." During that conversation Kevin said, "Hey, Black, man, I'm working on this shit as fast as I can, man." Defendant Graves responded, "[I] need mine. That 4-600 a week, you know how long that is going to be? I can't do that Kevin, man, you got to tell them peoples you owe a fuckin drug dealer money, slim. You got to do what you got to do, slim. I can't take no losses like that, slim. No bullshit. I need that 2,000 at a time. You taking my kindness for weakness." Defendant Graves further stated, "You got 10,000." During that conversation, defendant Graves was trying to collect on a $10,000 drug debt owed to

him by one of his narcotics customers. Defendant Graves also admitted that he was a drug dealer.

Co-defendant Speaks regularly supplied defendant Graves with heroin and cocaine base for redistribution. For example, on November 23, 2014, in activation number 9540 at approximately 9:11 a.m., defendant Graves called co-defendant Speaks and asked, "You got some soft?" Co-defendant Speaks replied, "Yah." Defendant Graves said, "Aight, I need, uh, I need like 200 soft and four of the down." Co-defendant Speaks responded, "four?" Defendant Graves said, "You hear me?" Co-defendant Speaks then said, "This right here I'm going for cha-ching. This right though. I aint gonna lie to you. Truth is you get it for fifteen." Defendant Graves replied, "Fifteen?" Co-defendant Speaks said, "Yah, you can just give me fourteen-five though take fifty off." Defendant Graves replied, "Nah, I'm talking about I got somebody trying like a user get 200. I was gonna get it for them." Co-defendant Speaks said, "Oh, oh c'mon then." Defendant Graves stated, "Aight, I be up there." During that conversation, defendant Graves called co-defendant Speaks and requested to be supplied with $200 worth of cocaine ("soft") and four grams of heroin ("down"). Co-defendant Speaks believed that defendant Graves wanted to purchase a large quantity of cocaine. Defendant Graves clarified that for that particular time, defendant Graves was purchasing the cocaine for someone else who only wanted to purchase $200 worth of cocaine ("I got somebody trying like a user get 200"). Co-defendant Speaks agreed to supply heroin and cocaine to defendant Graves ("Oh, oh c'mon then"). Later that same day, in activation number 9756 at approximately 2:19 p.m., defendant Graves again called co-defendant Speaks and said, "need two down, a jacket and 200 soft." During that conversation, defendant Graves added 3.5 grams of cocaine base ("a jacket") to his illegal narcotics order that he wanted to purchase from co-defendant Speaks.

On April 2, 2015, in activation number 357 at 5:09 p.m., defendant Graves sent a text to co-defendant Speaks that read, "Am ready." Approximately one minute later, in activation number 358 at approximately 5:10 p.m., defendant Graves sent the following text to co-defendant Speaks: "Got 400now b dne tonight u can drop 10 on me an i got 500 cumin n morning am give u dat to." Defendant Graves sent that text to inform co-defendant Speaks that defendant Graves had $400 to pay to co-defendant Speaks for illegal narcotics, that defendant Graves needed another 10 grams of illegal narcotics, and defendant Graves would have an additional $500 in the morning to pay to co-defendant Speaks. One minute later, in activation number 359 at approximately 5:11 p.m., co-defendant Speaks sent the following text to Jamal Graves: "Cum up da rec." Co-defendant Speaks told Graves to meet co-defendant Speaks at a recreation center for the drug transaction. In activation number 364 at approximately 5:12 p.m., defendant Graves acknowledged that he would be there by sending the text, "Soon my ride pull up." That same afternoon, in activation number 371 at approximately 5:42 p.m., co-defendant Speaks called defendant Graves. During that conversation, defendant Graves asked co-defendant Speaks whether he was at the "rec." Co-defendant Speaks told defendant Graves to call when defendant Graves was on Quebec, which was a reference to Quebec Street. Co-defendant Graves replied, "I'm out here now, yeah." Co-defendant Speaks told defendant Graves, "Alright look, go down pull right there at the store on Otis. I'll meet you right there at the corner store." Defendant Graves agreed to do so. That afternoon, co-defendant Speaks supplied illegal narcotics to defendant Graves for distribution, and defendant Graves paid $400 to co-defendant Speaks for the illegal narcotics.

On April 3, 2015, in activation number 562 at approximately 12:44 p.m., co-defendant Speaks called defendant Graves. During that conversation defendant Graves stated, "I'm at my joint waiting for my white man to come up from his joint. He owed me $500 so I am going to drop that off on you." Co-defendant Speaks replied, "Got some up." Defendant Graves asked, "You got some up?" Co-defendant Speaks responded, "Um, um." Defendant Graves stated, "That's a bet. Soon as this nigger touch down and shit them I'm going to come right up." Co-defendant Speaks replied, "Alright." Defendant Graves informed co-defendant Speaks that when defendant Graves received the $500, he was going to give that to co-defendant Speaks which would be applied toward the drug debt that defendant Graves owed co-defendant Speaks. Co-defendant Speaks informed defendant Graves that co-defendant Speaks had cocaine base to sell ("Got some up"). Defendant Graves also planned to obtain cocaine base from co-defendant Speaks.

Co-defendant Speaks also supplied illegal narcotics to defendant Graves on consignment. As a result, there were times during the narcotics conspiracy when defendant Graves owed a drug debt to co-defendant Speaks. For example, on April 12, 2015, in activation number 2524 at approximately 10:39 a.m., co-defendant Speaks called defendant Graves. During that conversation, co-defendant Speaks and defendant Graves had a lengthy discussion about how much money defendant Graves owed co-defendant Speaks for illegal narcotics that had been supplied on consignment by co-defendant Speaks to defendant Graves. Co-defendant Speaks stated, "I did the whatchucallum the math fool you hear me . . . say the math look like it was 2470, it was not 2600 I was wrong." Defendant Graves then asked, "How much you, you take off 7 right?" Co-defendant Speaks replied it was not 2670 and that co-defendant Speaks was going to meet with defendant Graves. A few minutes later in activation number 2525 at

approximately 10:49 a.m., defendant Graves sent a text to co-defendant Speaks that read, "its 2370 we at fool am give u 370 today." Co-defendant Speaks corrected the amount that he believed defendant Graves owed as a drug debt, and that it was $2,470 and not $2,600. Defendant Graves later sent a text that he believed he only owed $2,370 to co-defendant Speaks as a drug debt.

Co-defendant Leon Bullock also supplied defendant Graves with cocaine base, but in lesser quantities than co-defendant Speaks. Defendant Graves was referred to co-defendant Bullock by a narcotics tester/user after that person complained about the poor quality of defendant Grave's cocaine base.

The defendant was arrested on May 9, 2018. The defendant admits and accepts responsibility for conspiring to distribute and possess with intent to distribute at least 100 grams but less than 400 grams of heroin, and at least 112 grams but less than 196 grams of cocaine base. This quantity of illegal narcotics represents the total amount of controlled substances involved in the defendant's relevant criminal conduct, including amounts the defendant distributed or possessed with intent to distribute and amounts distributed or possessed with intent to distribute by the defendant's co-conspirators pursuant to jointly undertaken criminal activity that was reasonably foreseeable by the defendant and within the scope of his conspiratorial agreements or understanding. The defendant knowingly and intentionally conspired with co-defendants James Anthony Speaks, Jr., Sean Richardson, Leon Bullock and others known and unknown to the government, to distribute a mixture and substance containing a detectable amount of heroin cocaine base, and it was not by mistake, accident, or inadvertently.

Limited Nature of Proffer

This proffer of evidence is not intended to constitute a complete statement of all facts known by the defendant or the government but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

/s/ Karla-Dee Clark
Karla-Dee Clark
D.C. Bar No. 435-782
Assistant United States Attorney
555 4th Street, N.W., 4th Floor
Washington, DC 20530
(202) 252-7740
Karla-dee.clark@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I have read this Proffer of Evidence and have discussed it with my attorney, Pleasant Brodnax, Esquire. I fully understand this Proffer of Evidence. I agree and acknowledge by my signature that this Proffer of Evidence is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

Date: 11-8-18

_Jamal Graves_
Jamal Graves
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Proffer of Evidence and have reviewed it with my client Jamal Graves. I concur in my client's desire to adopt this Proffer of Evidence as true and accurate.

Date: 11/8/2018

_Pleasant S Brodnax_
Pleasant Brodnax, Esquire
Attorney for the Defendant